**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------

**ANTHONY PERKINS,**

                **Petitioner,**          **11 Civ. 3855 (JGK)**

        - against -                  <u>**OPINION AND ORDER**</u>

**THOMAS LAVALLEY,**

                **Respondent.**
---------------------------------

**JOHN G. KOELTL, District Judge:**

     The petitioner, Anthony Perkins, brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a jury trial, the petitioner was convicted of five counts of robbery in the second degree in violation of N.Y. Penal Law § 160.10(2)(a) and 160.10(2)(b); one count of burglary in the first degree in violation of N.Y. Penal Law § 140.30(2); and two counts of burglary in the second degree in violation N.Y. Penal Law §§ 140.25(1)(d) and 140.25(2). The petitioner was sentenced, as a persistent violent felony offender, principally to an aggregate term of 100 years to life imprisonment. The petitioner's conviction was affirmed on appeal, but his sentence was reduced to fifty years to life imprisonment. Leave to appeal to the New York Court of Appeals was denied.

The petitioner asserts that a writ of habeas corpus should issue for two reasons.[1] First, he argues that the state trial court erred in denying his motion to suppress an imitation pistol. Second, he argues that the evidence at trial was legally insufficient to prove the physical injury component of first degree burglary. For the reasons explained below, the petition for a writ of habeas corpus is **denied**.

**I.**

There was sufficient evidence at trial to establish that the petitioner perpetrated a string of robberies and burglaries in Manhattan during the summer of 2007. (Trial Tr. ("Tr.") 265-266, 292, 315, 357, 392, 527.) The first incident, involving two victims, occurred on July 1, 2007. (Tr. 266, 292.) Nicole Karas and Lauren Waxman were returning to Waxman's apartment around midnight when the petitioner approached them, pulled out a gun, and told them to put their bags and cell phones on the ground. (Tr. 267,

---

[1] The petitioner originally asserted that a writ should issue for four reasons. The petitioner has withdrawn his weight of the evidence claim and his sentencing objection because he failed to exhaust those claims in state court. (Reply Br. at 11).

294.)  They put their bags down, then ran to Waxman's apartment and called the police.  (Tr. 267, 276, 294, 299.)

The second incident occurred on July 15, 2007.  (Tr. 315.)  Eileen Nachbar was entering her building when the petitioner came up behind her and pushed her to the ground of the vestibule.  (Tr. 316.)  The petitioner hit her with a gun on the right side of her face.  (Tr. 325.)  She screamed and threw her purse at him, which he grabbed and rifled through, taking some items.  (Tr. 317, 326.)  At trial, Nachbar testified that her left shoulder was bruised from the fall and that her face was bruised from the pistol whipping.  (Tr. 316, 327-28.)  Photographic evidence depicted a red mark on her face.  (Tr.  328-29.)  Nachbar testified that her face throbbed in pain constantly for a week and the bruises to her shoulder and face lasted for about a week.  (Tr. 327-28.)  She did not seek medical treatment for her injuries, but she took Tylenol and Advil for the pain.  (Tr. 328.)

The third incident occurred on July 19, 2007. (Tr. 357-58.)  Melinda Laster was walking on East 12th Street when the petitioner approached her, pointed a gun at her, and told her to drop her purse or he would shoot her.  (Tr. 358-359.)  She dropped her purse and ran away. (Tr.  359.)

3

The fourth incident occurred on August 2, 2007 (Tr. 392-94.) Genevieve Sherman was walking home on West 78th Street when the petitioner approached her. She noticed the petitioner's gun, and he held her arms and had her sit down on a stoop. He asked for her iPod, phone, and any money she had. She gave him her iPod, cell phone, and money. (Tr. 394-95, 401.)

Detectives Steven Nieves and Louis Cruz of the Manhattan Robbery Squad investigated the robberies and burglaries. (Tr. 444, 527-28, 562.) Detective Nieves received information from a victim who indicated that the records from her stolen phone showed that a telephone number had been called. Detective Nieves identified Dorn Henderson as the owner of the phone that had been called. (Tr. 444-445, 480.) Detective Nieves arrested Henderson, and Henderson told the investigators that he knew a man named "Buzz" who had called him six or seven times over the summer attempting to sell him stolen cell phones. (Tr. 480, 483-91.)

On August 3, 2007, Detectives Nieves and Cruz drove with Henderson to Buzz's residence, Henderson identified the petitioner as Buzz, and the petitioner was arrested outside the building. (Tr. 445-46.) The petitioner told the detectives his apartment number and they went upstairs

4

to investigate. (Tr. 447-48.) Tina Howell, the petitioner's sister, answered the door. (Tr. 449.) Howell was the only legal resident of the apartment, and informed the detectives that the petitioner had been staying with her. (Tr. 450; Hr'g Tr. 61-63.) She agreed to let Detectives Nieves and Cruz look around, and signed a consent form allowing them to search the living room closet where the petitioner kept his belongings. (Tr. 450-53; Hr'g Tr. 20-23, 49, 60- 69.) Detective Cruz looked through the closet, and found an imitation pistol wrapped in a sheet in the closet. (Tr. 453.)

The trial court conducted a suppression hearing to consider the admissibility of evidence including the imitation pistol seized in Howell's apartment. The court denied the petitioner's motion to suppress, finding that the search was constitutional because it was conducted with the consent of a lawful resident of the apartment. (Ct. Ruling on Suppression Hr'g 13-14.)

After trial, the jury found the petitioner guilty of five counts of robbery in the second degree, one count of burglary in the first degree, and two counts of burglary in the second degree. (Tr. 768-71.) The jury was unable to reach a verdict on the charge relating to the alleged robbery of Ms. Laster and that charge was dismissed. (Tr.

5

747, 767, 772.) The court sentenced the petitioner as a persistent violent felony offender principally to four consecutive indeterminate prison terms of twenty-five years to life imprisonment for three of the robbery counts and the first degree burglary count, and four concurrent indeterminate prison terms of twenty-five years to life imprisonment for the remaining robbery and second degree burglary counts. (Sentencing Tr. 10-11.)  His total sentence was 100 years to life imprisonment.  (Sentencing Tr. 10-11.)

    The petitioner appealed to the New York State Supreme Court, Appellate Division, First Department. The petitioner raised four arguments: (1) the jury's verdict was against the weight of the evidence; (2) Howell did not have the authority to consent to the police search of the petitioner's personal belongings; (3) the prosecution had failed to prove the physical injury component of first degree burglary with respect to the burglary of Ms. Nachbar; and (4) the petitioner's sentence was excessive.

    The Appellate Division found that the verdict was based on legally sufficient evidence and was not against the weight of the evidence. The court also found that the petitioner had not specifically challenged his sister's authority to consent to the search of the bundle in the

6

closet, and the issue was therefore unpreserved for appeal. Moreover, the court found, in the alternative, that, to the extent the hearing record permitted review, the sister possessed actual or apparent authority to consent to the search. The court further found that the physical injury component of first degree burglary was established because Ms. Nachbar suffered more than "slight or trivial pain" and the petitioner's actions went beyond "petty slaps, shoves, kicks, and the like." People v. Chiddick, 866 N.E.2d 1039, 1040 (N.Y. 2007), (citing In Re Philip A., 400 N.E.2d 358, 359 (N.Y. 1980)). The Court concluded, however, that the sentence was excessive. See People v. Perkins, 890 N.Y.S.2d 528 (App. Div. 2009). Accordingly, the Appellate Division modified petitioner's judgment of conviction, ordering that the sentences for second degree robbery for the first and second counts be served concurrently with each other and with the sentences for all other counts, resulting in a new aggregate term of fifty years to life imprisonment. Id. Leave to appeal to the New York Court of Appeals was denied on May 26, 2010. People v. Perkins, 929 N.E.2d 1014 (N.Y. 2010).

   The petitioner filed his petition for a writ of habeas corpus in this Court on May 23, 2010. The petitioner moved for a stay of his petition to allow for exhaustion of his

7

claims in state court.  This Court denied a stay on May 30, 2012.  See Perkins v. LaValley, No. 11 Civ. 3855, 2012 WL 1948773, at *2 (S.D.N.Y. May 30, 2012).

## II.

The petitioner filed this timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Section 2254(d) provides that a federal court may grant habeas corpus relief only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); see Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Williams v. Taylor, 529 U.S. 362, 402-03 (2000); Lynn v. Bliden, 443 F.3d 238, 245 (2d Cir. 2006); see also Williams v. Artus, 691 F. Supp. 2d 515, 522 (S.D.N.Y. 2010).  A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent

8

and arrives at a result opposite to" the Supreme Court's result.  Williams, 529 U.S. at 405.  To meet that standard, "the state court decision [must] be more than incorrect or erroneous;" it "must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citing Williams, 529 U.S. at 409, 410, 412)).

A state court's factual findings are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  The petitioner bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated.  See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

### III.

The petitioner argues that the state courts committed two errors that violated his constitutional rights.  First, he asserts that the imitation pistol should have been suppressed because Howell had no authority to consent to the search of the bundle in which the imitation pistol was found.  Second, he argues that the evidence at trial was legally insufficient to prove the physical injury component of first degree burglary.  The petitioner's claims are without merit and are denied.

9

**A.**

The petitioner first argues that his motion to suppress the imitation pistol should have been granted. In his petition, the petitioner adopted the arguments from his brief to the Appellate Division. In that brief, the petitioner argued that Howell did not have actual or apparent authority to consent to the search of the bundle in the closet in which the imitation pistol was found. He argued that the search for and seizure of the pistol therefore violated his Fourth Amendment rights.  Fourth Amendment claims cannot be re-litigated on federal habeas review when they have been fully and fairly litigated below.  See Stone v. Powell, 428 U.S. 465, 482 (1983). Thus, the petitioner must demonstrate that the process below denied him a full and fair opportunity to litigate his Fourth Amendment claim.  Id.; see also Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991), Canteen v. Smith, 555 F. Supp. 2d 407, 416 (S.D.N.Y. 2008).

A federal district court will review Fourth Amendment issues raised in a habeas corpus petition "in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that

10

mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992); see also Kirk v. Burge, 646 F. Supp. 2d 534, 545 (S.D.N.Y. 2009).  If the state has enacted a statutory mechanism for the suppression of evidence, allowing a defendant to fully and fairly litigate Fourth Amendment issues, the federal courts may not reexamine those issues on habeas corpus review.  McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983).  New York "provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial" through a suppression hearing under N.Y. Crim. Proc. Law § 710.  Shaw v. Scully, 654 F. Supp. 859, 864 (S.D.N.Y. 1987).  The petitioner acknowledges the trial court conducted a suppression hearing on his Fourth Amendment claim, but he alleges that there was an unconscionable breakdown in the underlying process when the Appellate Division failed to address whether Howell had the authority to consent to a search of the petitioner's personal effects.[2]

---

[2] The petitioner also argues that because the Appellate Division unreasonably applied federal law under United States v. Matlock, 415 U.S. 164 (1974), this court owes the state court's decision no deference.  However, mere disagreement with the application of Fourth Amendment law is not cognizable under habeas corpus review because it

The Appellate Division concluded that the petitioner had failed to argue to the trial court that Howell lacked actual or apparent authority to consent to the search of the bundle in the closet. The only suppression argument that the petitioner had made before the trial court was that the seizure was the result of an unlawful arrest of the petitioner. Therefore, the prosecution was never placed on notice that there was any need to develop the record as to the status of the bundle in the closet and the sister's actual or apparent authority to consent to the search of that bundle. Perkins, 890 N.Y.S. 2d at 529. The alleged error in denying the motion to suppress based on the lack of consent was therefore unpreserved, and the court declined to review it. Id. While the trial court found that there was consent to search, there was no need to focus on specific consent to the search of the bundle because that argument was not specifically made. The trial court did find that there was consent to search, but did not focus on the search of the bundle, as opposed, for example, to the search of the closet. (Ruling on Suppression Hr'g 13-14.)

---

does not amount to an unconscionable breakdown in the underlying process. See Capellan, 975 F.2d at 72; see also Kirk, 646 F. Supp. 2d at 545.

The Appellate Division found, as an alternative holding, "to the extent the hearing record permits review, it establishes the sister possessed, or at least reasonably appeared to possess, common authority with the defendant over the closet and its contents, including the bundled bedsheet." Perkins, 890 N.Y.S.2d at 529.

It is plain that there was no unconscionable breakdown in the underlying process by which the petitioner had the full and fair opportunity to present his Fourth Amendment claim to the New York state courts. He could have raised all of the arguments in the trial court as to the unconstitutionality of the seizure of the pistol. He chose to limit those arguments to his alleged unconstitutional arrest which was the predicate for the search. That decision was understandable in view of Howell's authority over the apartment and her consent to search the closet. There was no unconscionable breakdown in New York's procedures. Moreover, the Appellate Division considered the petitioner's argument, in the alternative, and rejected it based on the record that had been developed. This was not an "unconscionable breakdown" in corrective procedures. This test looks to the ability to exercise corrective procedures and seeks to determine whether there was any "disruption or obstruction of a state proceeding" typifying

13

an unconscionable breakdown. Capellan, 975 F.2d at 70 (quoting Shaw, 654 F.Supp. at 864). There was no such disruption or obstruction, only a failure by the petitioner to make an argument in the trial court when he had a full opportunity to do so.

This argument would also be barred because there is an independent and adequate state ground for the rejection of the petitioner's Fourth Amendment claim. The Appellate Division found that the alleged error was unpreserved. The petitioner has failed to show cause and prejudice or a fundamental miscarriage of justice that could overcome this procedural default. See Coleman v. Thompson, 501 U.S. 722, 729, 748-50 (1991).

The petitioner received a full and fair opportunity to litigate his claim; therefore, this claim is barred on habeas review.  Accordingly, it is **denied.**

### B.

Second, the petitioner asserts that there was insufficient evidence for the jury to find that he caused physical injury to Ms. Nachbar.  However, a rational trier of fact could readily have found beyond a reasonable doubt that Nachbar experienced substantial pain sufficient to

14

meet the physical injury standard under N.Y. Penal Law § 10.00[9].

When considering insufficiency of the evidence claims, a federal district court must consider the trial evidence in the light most favorable to the state and uphold the conviction if "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). The court may only overturn the state court's decision if it was "objectively unreasonable." <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2062 (2012) (per curiam) (<u>quoting</u> <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1862 (2010)). Therefore, "doubly deferential standard of review" applies to the petitioner's sufficiency challenge. <u>Garbutt v. Conway</u>, 668 F.3d 79, 81 (2d Cir. 2012) (per curiam). The court must first defer to the jury's verdict, and second to the state court's determination pursuant to the standard of review under 28 U.S.C. § 2254(d). <u>Id.</u>

A federal court must look to state law to determine the elements of the crime when considering the sufficiency of the evidence for a state conviction. See <u>Ponnapula v. Spitzer</u>, 297 F.3d 172, 179 (2d Cir. 2002) (<u>citing</u> <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir. 1999)). Under N.Y. Penal Law § 140.30(2), a person is guilty of

15

first degree burglary if the person knowingly enters a dwelling with the intent to commit a crime therein, and while inside, causes physical injury to a non-participant. See N.Y. Penal Law § 140.30(2).  N.Y. Penal Law § 10.00[9] defines "physical injury" as "impairment of the physical condition or substantial pain."  See N.Y. Penal Law § 10.00[9].  At trial, the state offered evidence of substantial pain to satisfy the requirement of N.Y. Penal Law 10.00[9].

   The evidence presented at the petitioner's trial demonstrates that the Appellate Division was not objectively unreasonable in concluding that a rational jury could find that Nachbar experienced substantial pain. Nachbar's pain did not fall below the objective level required by law because the petitioner's conduct went beyond "petty slaps, shoves, kicks and the like."  See In Re Philip A., 400 N.E.2d at 359.  Nachbar's testimony at trial evidenced that her pain was more than "slight or trivial" because her face throbbed constantly for about a week.  See Chiddick, 866 N.E.2d at 1040 ("Of course 'substantial pain' cannot be defined precisely, but it can be said that it is more than slight or trivial pain.  Pain need not, however, be severe or intense to be substantial.")  The Court of Appeals adopted a non-

16

inclusive four factor test in Chiddick that is helpful when considering substantial pain under N.Y. Penal Law 10.00[9]. Id. Using that standard, it is clear that Nachbar's injury, viewed objectively, was likely to cause substantial pain because she was hit across the face with a hard object, resulting in bruising and red marks. Nachbar's subjective description of her pain evidenced that her pain was substantial because she said it lasted a week and described the pain as "throbbing." Nachbar did not seek medical treatment, but did self-medicate with Tylenol and Advil. Moreover, the petitioner's motive in pushing her to the ground of the vestibule, then whipping her across the face with the imitation pistol, exceeded mere harassment, and appeared calculated to keep her down. The objective factors support a finding of substantial pain. The fact that Nachbar did not seek medical treatment is not dispositive of whether she suffered substantial pain. See People v. Guidice, 634 N.E.2d 951, 954 (N.Y. 1994). The state also produced corroborating evidence at trial, a picture that showed a red mark on Nachbar's face, which further supports the resulting reasonable verdict of the jury.

A rational trier of fact could have found that Nachbar experienced substantial pain. Therefore, the Appellate

Division did not come to an objectively unreasonable conclusion when it rejected the petitioner's claim of insufficient evidence.

## Conclusion

For the reasons explained above, the petition pursuant to 28 U.S.C. § 2254 is **denied.** The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) because the petitioner has failed to make a substantial showing of the denial of a constitutional right. The Clerk is directed to enter judgment dismissing the petition and closing this case.

**SO ORDERED.**

**Dated:** New York, New York
February 11, 2013          _____/S/_____
                           **John G. Koeltl
                           United States District Judge**